## Case No. 1,741.

### In re BOWNE et al.

[12 N. B. R. 529; 1 N. Y. Wkly. Dig. 100.][1]

District Court, D. New Jersey. 1875.

LANDLORD AND TENANT — RENT — PAYMENT BY NOTE—LANDLORD'S LIEN—BANKRUPTCY OF TENANT.

1. If a note taken for rent is not paid at maturity the landlord is entitled to all his remedies for the security or collection of his claim, in the same manner as if the note had never been given.

[See Scriba v. Deanes, Case No. 12,559; Bank of U. S. v. Winston, Id. 944; U. S. v. Morrison, 4 Pet. (29 U. S.) 124; Morsell v. First Nat. Bank, 91 U. S. 357.]

2. If a tenant makes an assignment for the benefit of creditors to a trustee who sells the goods on the premises after the commencement of the proceedings in bankruptcy, and turns the proceeds over to the assignee, the landlord is entitled to payment of the rent out of the proceeds.

[See In re Beadle, Case No. 1,155.]

In bankruptcy.

W. S. Dayton, for landlord.

James Buchanan, for assignee.

NIXON, District Judge. John F. Klein has filed his proof of claim against the bankrupt's estate for two hundred and ninety dollars, alleged to be due to him on account of two months' rent ending July 28, 1874, for the premises occupied by the bankrupts at the time of the adjudication of bankruptcy. He claims that he is entitled to be paid in full, out of the proceeds of the sale of the chattels which were in the demised premises at the date of the filing of the petition.

The evidence reveals this state of facts: The bankrupt rented of the claimant the two stores Nos. 27 and 27½ East State street, at the annual rental of two thousand dollars, payable monthly. On the 28th of July, 1874, he took the promissory note of his tenants, payable three months after date, at the First National Bank of Trenton, for two hundred and ninety dollars, on account of the rent for the months of June and July, that sum being the balance acknowledged to be due after allowing for all cash payments previously made thereon. The note matured on the 31st day of October, and was duly protested for non-payment at the close of banking hours on that day. On the morning of the same day, about 10 or 11 o'clock, the claimant caused a distress warrant to be issued, for three hundred and thirty-three dollars and thirty-three cents, the two months' rent due for August and September. A few days afterwards—it does not clearly appear when—the debtors made an assignment of all their estate, under the state law, to one Charles W. Street for the equal benefit of all their creditors. Mr. Street entered upon the possession of the property, being a stock of goods in a gentlemen's furnishing store, of

[1] [Reprinted from 12 N. B. R. 529, by permission. 1 N. Y. Wkly. Dig. 100, contains only a partial report.]

the value of about five thousand dollars, and began to make sale of them as assignee. Before any considerable quantity was disposed of, to wit: on the 9th day of November, 1874, a petition in bankruptcy was filed against Bowne & Ten Eyck, and, on the 10th, an injunction was issued, specifically restraining them, and the sheriff of the county of Mercer, from disposing of or in any manner interfering with the property of the alleged bankrupt. The assignee, Street, was not named in the injunction, nor does it appear from the marshal's return that it was served upon him. Bowne & Ten Eyck were duly adjudged bankrupts on the 24th of November, when a warrant was put into the hands of the marshal, who, on the next day, took charge of the bankrupts' estate. He did not interfere, however, with the proceeding of Mr. Street, the assignee under the state law, who seems, with the tacit acquiescence or understanding of all the parties, to have retained the control of the goods, and to have continued their sale until the whole was converted into money. The assignee in bankruptcy, Yard, was appointed on the 29th of December, and the proceeds of the sale, amounting to upwards of five thousand dollars, were paid over to him by Mr. Street.

No serious question is raised but that the bankrupt estate owes the amount claimed for rent. It is true that the landlord took the tenants' note for it, and gave a receipt in full. But the note was never paid, and is still in the hands of the claimant ready to be surrendered, and hence the debt it was given to pay remains due and owing (2 Greenl. Ev. § 520; Burden v. Halton, 4 Bing. 454; Holmes v. De Camp, 1 Johns. 33), and the payee is entitled to all his remedies for the security or the collection of the debt, in the same manner as if the note had never been given (Edwards v. Derrickson, 28 N. J. Law, 39). Has the landlord lost his right to claim a lien on the goods and chattels on the premises for payment of the same? This question must be answered in the affirmative, unless there are some provisions of the bankrupt act which justify or protect the landlord in his inaction or acquiescence in the sale of the property by the assignee. A right to distrain for the rent in arrear arose to the landlord, on the 31st of October, after the maturity and protest of the note which had been given for its payment. The assignment of the property to Street, by the debtors, did not take away this right, as long as it remained on the demised premises. Hoskins v. Paul, 9 N. J. [Law] 110. But if the landlord stood by and saw the assignee make a sale of the goods and chattels from day to day, to bona fide purchasers, without protest or interference, he could not afterwards claim a lien upon the proceeds of sale, nor a right to distrain upon the property after sale and removal. Nix. Dig. tit. "Distress," § 11. But it has long been held that by the clear provisions of the bankrupt act, the assignee in

bankruptcy takes the property in the same plight in which it was held by the bankrupt when the petition was filed, subject to all the liens and incumbrances that would have affected it if no adjudication in bankruptcy had taken place. The petition in this case was filed November 9, 1874. The great bulk of the goods and chattels was then on the premises, in the hands of the assignee, Street, and subject to the landlord's lien. The counsel for the assignee insisted on the argument that the landlord has no lien on his tenant's goods for rent due until after the levy of the distress warrant. This is only true in the sense that he cannot follow the property in the hands of a bona fide purchaser without notice of his claim. It is a general proposition that, whenever the law gives to a creditor the right to have his debt satisfied from the proceeds of property, or before the property can be otherwise disposed of, it gives a lien on such property to secure the payment of the debt.

The whole question here involved was fully discussed and settled by Chase, C. J., in Re Wynne [Case No. 18,117]. "As we understand the bankrupt act," he says, "all the rights and all the duties of the bankrupt, in respect to whatever property, not expressly excluded from the operation of the act, he may hold, under whatever title, whether legal or equitable, and however encumbered, pass to and devolve upon the assignee at the date of the filing of the petition in bankruptcy. And all rights thus acquired are to be enforced by process, and all duties thus imposed are to be performed under the superintendence of the national courts. No lien can be acquired or enforced by any proceeding in a state court commenced after petition is filed." * * * "Whether, therefore, the distress warrant or the attachment be regarded as a proceeding for obtaining or enforcing a lien, each was equally unwarranted. If a lien for rent existed, it was a lien to be discharged by the assignee, and enforced in the United States court of bankruptcy." He then quotes the 12th section of the 128th chapter of the Revised Code of Virginia, forbidding all persons claiming an interest in goods from removing them from the demised premises, without paying to the landlord the rent due, etc., not exceeding one year—substantially similar to the 4th section of the landlord and tenant act of New Jersey [Act March 10, 1795; Laws N. J. 187]—and adds: "We cannot doubt that this statute creates a lien in favor of the landlord, and a lien of a high and peculiar character." Under the authority of that case, and upon principle, I am of the opinion that the landlord, upon the facts proved, is entitled to the payment of his claim as a secured debt, and it is ordered accordingly.